## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Fred Lee Henderson,<br><br>Defendant. | Case No. 24-cr-00056 (SRN/DLM)<br><br><br>**ORDER ON DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION** |

Ruth Shnider, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for United States of America

Aaron J. Morrison and Daniel P. Huddleston, Officer of the Federal Defender, 300 S. 4th St., Ste. 107, Minneapolis, MN 55415, for Defendant Fred Lee Henderson

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Fred Lee Henderson's Objections [Doc. No. 45] to Magistrate Judge Douglas L. Micko's October 21, 2024 Report and Recommendation ("R&R") [Doc. No. 43]. In the R&R, Magistrate Judge Micko recommended the denial of Mr. Henderson's Motion to Dismiss Counts 1–3 of the Indictment [Doc. No. 25] and his Motion to Suppress Evidence and for a *Franks* Hearing [Doc. No. 26]. For the reasons set forth below, the Court overrules Mr. Henderson's Objections, adopts Magistrate Judge Micko's R&R, and denies Mr. Henderson's motions.

## I.    BACKGROUND

In February 2024, a grand jury charged Mr. Henderson with three counts of being a felon in possession of a firearm.  (Indictment [Doc. No. 13], Counts 1–3.)  The counts stem from incidents occurring on June 23, 2023, involving one gun, and on December 6, 2023, involving two guns.

In his motions, Mr. Henderson moves to dismiss the Indictment and also challenges search warrants issued for the following:  (1) T-Mobile cell phone location data; (2) a search warrant for an apartment residence on Clover Leaf Parkway in Blaine, Minnesota; and (3) a search warrant for an apartment residence on Blackberry Trail in Inver Grove Heights, Minnesota.[1]

### A.  T-Mobile Tracking Warrant

In November 2023, law enforcement officers sought T-Mobile cell phone location data for Mr. Henderson's cell phone based on their belief that Mr. Henderson was connected to the shooting of an eight-year-old child, caught in gun crossfire, on Bradley Avenue in St. Paul on June 20, 2023.  (T-Mobile Tracking Warrant Appl. at 4, Gov't Ex. 2.[2])

---

[1] Initially, Mr. Henderson also moved to suppress evidence obtained pursuant to an October 31, 2023 Facebook search warrant.  However, he subsequently withdrew his challenge based on Officer Brian Wanschura's sworn testimony at the suppression hearing that law enforcement received only IP addresses and subscriber information from the Facebook search warrant.  (R&R at 2 n.2.)

[2] The pertinent search warrants were offered in evidence at the August 8, 2024 suppression hearing.  As relevant here, they were offered and received in evidence as Government Exhibits 2 (T-Mobile Tracking Application/Affidavit, Search Warrant, and Return), 3

In the T-Mobile Tracking Warrant Affidavit, St. Paul Police Officer Brian Wanschura stated that Mr. Henderson was close friends with one of the other shooting suspects, Perry Hooper. (*Id*.) Officers had previously obtained a warrant to search Perry Hooper's Facebook account and found that Mr. Hooper had made a Facebook call to "Bfts Fredo," a name associated with Mr. Henderson, on the night of the shooting. (*Id*.) Officer Wanschura stated that Mr. Hooper and Mr. Henderson had exchanged a total of three calls shortly before and after the shooting. (*Id*.) Through a trap and trace warrant, officers had previously learned Mr. Henderson's cell phone number. (*Id*.) Also, through open-source social media, they learned that Mr. Henderson, whose first name is Fred, frequently refers to himself as "Fredo." (*Id*.)

Additionally, Officer Wanschura stated that officers were planning to take Mr. Henderson into custody for a "PC pickup and hold for 1st degree assault" that was issued by homicide investigators on October 30, 2023. (*Id*.)

Officer Wanschura requested a cell phone tracking warrant in order to learn Mr. Henderson's physical location from June 19, 2023 through November 15, 2023, stating that such information could lead to finding additional suspects and evidence related to the June 20 shooting, and could also assist investigators in proving or disproving Mr. Henderson's involvement in the October 2023 assault. (*Id*.) A Ramsey County District Court Judge signed the warrant and officers obtained Mr. Henderson's location information. (*Id*. at 10.)

---

(Blackberry Trail Application/Affidavit, Search Warrant, and Return), and 4 (Clover Leaf Parkway Application/Affidavit, Search Warrant, and Return).

**B. Residential Search Warrants**

As part of the continuing investigation into the Bradley Street shooting, on November 28, 2023, St. Paul Police Officer Chenoa Fields applied for search warrants to search residences on Blackberry Trail in Inver Grove Heights, Minnesota, and Clover Leaf Parkway in Blaine, Minnesota (collectively, the "Residential Search Warrants").[3] (Blackberry Trail Appl. at 2, Gov't Ex. 3.)  Officers sought these warrants because they continued to suspect that Mr. Henderson was involved in the shooting and believed that he kept personal property at the two residences.  (R&R at 5.)

In the search warrant affidavits, Officer Fields noted that video surveillance footage from the night of the shooting showed a person identified as D.M.H. attending an outdoor family barbecue that was held by the shooting victim's mother in her townhome complex. (Blackberry Trail Appl. at 2.)  The victim's mother did not know D.M.H.  (*Id*.)  However, she subsequently learned that D.M.H. had experienced ongoing problems with one of her townhome neighbors, whom she knew as "Perry."  (*Id*. at 3.)  She also learned that the conflict between Perry and D.M.H. had originated in prison, where the two men served time together.  (*Id*.)  Investigators identified the neighbor as Perry Hooper and verified that he had served prison time with D.M.H., and that the two men were affiliated with rival gangs.  (*Id.*)

As seen on video footage, at some point during the barbecue, a vehicle approached

---

[3] Because the affidavits for the Residential Search Warrants are identical, the Court's page citations to the Blackberry Trail Search Warrant Affidavit (Gov't Ex. 3) apply equally to the Clover Leaf Parkway Search Warrant Affidavit (Gov't Ex. 4).

and two male occupants exited it.  (*Id.*)  D.M.H. appeared to be familiar with them.  (*Id.*)

Shortly thereafter, one of the men fired gunshots toward D.M.H.  (*Id.*)  Two of the barbecue

attendees used their own handguns to return fire.  (*Id.*)  After reviewing video footage and

the collected shell casings, officers believed that a total of four people shot at each other.

(*Id.* at 2.)  Video footage showed the shooting suspects fled in a black Chevrolet Tahoe

with a chrome driver's side mirror, non-chrome passenger-side mirror, an after-market

Chevrolet logo in the grill, after-market taillights, and an item hanging from the rearview

mirror.  (*Id.* at 3.)

In addition, based on the surveillance video, Officer Fields described one of the

shooters as a black male of average height and weight, wearing a white t-shirt, jeans, and

white sneakers, with a fade haircut.  (*Id.* at 3–5.)  The affidavit further states, "Henderson

is a black male, average height and weight with a short fade."  (*Id.* at 5.)

Additional surveillance footage from the shooting showed Mr. Hooper and D.M.H.

engage in physical contact, with Hooper grabbing D.M.H. by the neck and pulling his head

down.  (*Id.* at 3.)  After the confrontation, Mr. Hooper returned to the front door of his

townhome and began to text and make phone calls.  (*Id.*)  Shortly after Mr. Hooper entered

his townhome, the suspect vehicle arrived on the scene.  (*Id.*)  Officer Fields acknowledged

in the Residential Search Warrant Affidavits that the videos did not show Mr. Hooper

directly involved in firing a weapon.  (*Id.* at 4.)  But based on video surveillance showing

Hooper on his phone between the altercation with D.M.H. and the shooting, she believed

that Hooper may have summoned the shooters to the scene to contend with D.M.H.  (*Id.*)

Officer Fields also stated that a lead from the National Integrated Ballistic

Information Network ("NIBIN") linked casings from one of the guns used in the June 20 shooting to a gun used in an April 2023 shooting in which a person identified as Travis Warner was the shooter. (*Id*. at 5.) Officer Fields further stated that when questioned by law enforcement, Warner admitted that his black Chevy Tahoe was present at the scene of the June 2023 shooting on Bradley Street. (*Id*.) Also, Officer Fields explained that she knew "[Mr.] Henderson is a very close associate of Warner's and was alleged to have been with Warner during this previous [April] shooting per a witness. Henderson and Warner are also in multiple Facebook pictures together and are present in music videos together as well." (*Id*.)

Officer Fields then reiterated the information contained in the T-Mobile Tracking Warrant Affidavit regarding communications between the Facebook accounts of Hooper and "Bfts Fredo." (*Id*.) She stated that investigators had received the IP address for the "Bfts Fredo" Facebook account and found that it used a CenturyLink IP address to log into Facebook. (*Id*.) The Residential Search Warrant Affidavits recount that law enforcement then sent the IP information to Century Link to identify the account used to log into Facebook. (*Id*.) CenturyLink provided law enforcement with "account information for [A.M.] with an address of [XXXX] Blackberry Trail #[XXX], Inver Grove Heights, Minnesota 55076. Investigators also located a phone number they believed to be [Mr.] Henderson's via the Facebook data ([XXX-XXX-XXXX])." (*Id*. at 5–6.) Investigators then obtained the T-Mobile Warrant, which tracked Mr. Henderson's location to two primary addresses: an apartment on Clover Leaf Parkway in Blaine, and an apartment on Blackberry Trail in Inver Grove Heights. (*Id*.)

Officer Fields further stated that during a traffic stop on June 23, 2023, officers arrested Mr. Henderson for possessing a firearm. (*Id.* at 6.)  A woman named B.K. owned the vehicle involved in the stop. (*Id.*)  Jail call records showed that B.K. and Mr. Henderson frequently spoke by phone and the jail call system identified B.K.'s address as the apartment building on Clover Leaf Parkway in Blaine. (*Id.*)

As for Blackberry Trail, Officer Fields stated that investigators contacted the apartment building management company and reviewed surveillance footage from November 20, 2023. (*Id.*)  She noted that the video footage showed Mr. Henderson and A.M. walking together in the hallway of the Blackberry Trail building, as confirmed by phone pings that placed him at that location at the time. (*Id.*)  Apartment staff verified that A.M. was the renter of the apartment. (*Id.*)  Officer Fields stated that Mr. Henderson appeared to split his time between the apartment in Inver Grove Heights, where he spent weekdays, and Blaine, where he spent weekends. (*Id.*)

Finally, Officer Fields stated her belief that because the two apartments served as Mr. Henderson's primary addresses, it was reasonable to assume that he possessed personal property at each location. (*Id.* at 7.)

A Dakota County state court judge reviewed and authorized the Blackberry Trail Search Warrant, (Blackberry Trail Search Warrant at 3), and an Anoka County state court judge reviewed and authorized the Clover Leaf Parkway Search Warrant (Clover Leaf Pkwy. Search Warrant at 3, Gov't Ex. 4).  Both search warrants were issued on November 28, 2023, and authorized searches for firearms and ammunition, papers and other indicia of firearms ownership, paperwork concerning ownership or occupancy of the residences,

phones or cell phones, and any clothing that may have been worn by the suspect at the time of the crime. (Blackberry Trail Appl. at 1; Clover Leaf Pkwy. Appl. at 1.)

On December 6, 2023, law enforcement officers executed both search warrants. (Blackberry Trail Return at 1; Clover Leaf Pkwy. Return at 1.) The search of the Blackberry Trail apartment resulted in the seizure of a cell phone, a Glock handgun, magazines, a gun case, and loose ammunition. (Blackberry Trail Return at 1.) The search of the Clover Leaf Parkway apartment resulted in the seizure of a cell phone, a Glock handgun, and certain clothing items. (Clover Leaf Pkwy. Return at 1.)

As noted earlier, in February 2024, a grand jury indicted Mr. Henderson on the instant felon-in-possession charges. Shortly thereafter, he filed the pending motions.

### C. Testimony at Suppression Hearing

Two witnesses testified at the suppression hearing in this case, held before Magistrate Judge Micko on August 8, 2024: Officer Wanschura and Officer Fields. Magistrate Judge Micko permitted defense counsel to question the Government's witnesses regarding issues raised in Mr. Henderson's Motion to Suppress Evidence and for a *Franks* Hearing.

Officer Wanschura, who is assigned to the St. Paul Police Department's Gang Unit that investigated the June 20 shooting, testified about the collaborative nature of the Gang Unit's work. (Aug. 8, 2024 Hr'g Tr. [Doc. No. 40] at 14–15, 33.) For example, he noted that officers frequently collaborate by speaking in person, holding meetings, and discussing findings gleaned from executed warrants, videos, and pertinent records. (*Id*. at 14–15, 25–26, 33.)

8

Officer Wanschura testified that although the Affidavit for the T-Mobile Tracking Warrant did not contain as many details as Officer Fields' subsequent Residential Search Warrant Affidavits, he was aware of "substantially the same information that is laid out in Officer Fields' affidavits" at the time he applied for the T-Mobile Search Warrant. (*Id*. at 20–21.)  Among the information of which he was aware was:  (1) the "significance and timing" of the Facebook calls between Mr. Henderson and Mr. Hooper; (2) that a person who looked similar to Mr. Henderson was visible on surveillance video from the June 20 shooting; and (3) the NIBIN link between the June 20 shooting and an April 2023 shooting at which both Mr. Henderson and Travis Warner (another suspect in the June 20 shooting) were allegedly present. (*Id*.)  He testified that he requested the T-Mobile Tracking Warrant to both locate evidence from the June 20 shooting and to locate Mr. Henderson, noting that a probable cause "pick-up" for Mr. Henderson had been issued before he wrote the T-Mobile Tracking Warrant Affidavit. (*Id*. at 22.)  Finally, Officer Wanschura testified that on past occasions, judges have asked him follow-up questions when presented with  search warrant applications or have even refused to sign search warrants, but the issuing judge here raised no concerns. (*Id*. at 19–20.)

Officer Fields, the affiant for the Residential Search Warrants, testified about her role in applying for the warrants and about the Gang Unit in general.  Officer Fields is also assigned to the St. Paul Police Department's Gang Unit, which investigates gun crimes and violent crimes. (*Id.* at 35, 37–38.)  Officer Fields served as the Gang Unit's de facto lead investigator on the investigation into the June 20 shooting. (*Id*.)  Like Officer Wanschura, Officer Fields testified that the Gang Unit is team-oriented, and as the lead investigator,

she frequently delegates tasks to colleagues, such as writing search warrants. (*Id.*) She further stated that officers share and discuss new information with each other. (*Id.* at 37–38.) In this case, Officer Fields asked Officer Wanschura to draft an affidavit for the T-Mobile Tracking Warrant, although she did not review it at the time. (*Id.* at 39.) Subsequently, she reviewed information obtained from the search, which she referenced in her own Residential Search Warrant Affidavits. (*Id.* at 39–40.) She testified that based on the collective knowledge of the investigative team at the time Officer Wanschura applied for the T-Mobile Tracking Warrant, she believed there was probable cause for the T-Mobile Tracking Warrant. (*Id.* at 39.)

### D. Pending Motions, R&R, and Objections

In his Motion to Dismiss the Indictment, Mr. Henderson argues that Counts 1 through 3 of the Indictment violate the Second Amendment both facially and as applied to him, in light of *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). However, in the R&R, Magistrate Judge Micko noted Mr. Henderson's concession that binding Eighth Circuit precedent forecloses relief on these grounds. (R&R at 10.) Accordingly, Magistrate Judge Micko recommended the denial of Mr. Henderson's Motion to Dismiss the Indictment. (*Id.*)

In Mr. Henderson's Motion to Suppress Evidence and for a *Franks* hearing, Mr. Henderson moves to suppress the T-Mobile Tracking Warrant and the two Residential Search Warrants. As to the T-Mobile Tracking Warrant, Magistrate Judge Micko found that a substantial basis supported the issuing judge's finding of probable cause, and even if the warrant were defective, the good-faith exception to the Fourth Amendment under

*United States v. Leon*, 468 U.S. 897 (1984), would apply. (R&R at 12.) As to the Residential Search Warrants, Magistrate Judge Micko found they were not constitutionally deficient, as a substantial basis supported the issuing judge's finding of probable cause, and they do not violate *Franks v. Delaware*, 438 U.S. 154, 155 (1978). (*Id.* at 15–22.) Accordingly, Magistrate Judge Micko recommended the denial of Mr. Henderson's motions.

In his Objections, Mr. Henderson argues that no substantial basis supported the issuing judge's finding of probable cause for the T-Mobile Tracking Warrant and that even absent probable cause, the good faith exception does not apply. (Def.'s Objs. at 7–10.) Similarly, he argues that the Residential Search Warrants were not substantially supported by probable cause, the good faith exception is inapplicable, and the warrants violated *Franks*. (*Id.* at 10–18.)

In response to Mr. Henderson's Objections, the Government urges the Court to overrule them, adopt the R&R in its entirety, and deny Mr. Henderson's motions. (Gov't's Response [Doc. No. 48] at 1–5.)

## II.    DISCUSSION

### A.  Standard of Review

The district court reviews a magistrate judge's recommendations on dispositive matters de novo, undertaking an independent analysis of those portions of the R&R to which a party objects. 28 U.S.C. § 636(b)(1)(C); *see also* D. Minn. L.R. 72.2(b)(3).

### B.  Motion to Dismiss Indictment Under *Bruen*

Mr. Henderson, citing *Bruen*, 597 U.S. 1, challenges the facial and as-applied

constitutionality of 18 U.S.C. § 922(g)(1).  He acknowledges that Eighth Circuit authority in *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024), forecloses relief on this basis, but he seeks to preserve the issue for review.  (Def.'s Objs. at 6–7.)

In light of binding precedent, the Court adopts the magistrate judge's recommendation and denies Mr. Henderson's Motion to Dismiss the Indictment.

### C.  Motion to Suppress Evidence and for a *Franks* Hearing

#### 1.  T-Mobile Tracking Warrant

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" and that "no warrants shall issue, but upon probable cause supported by Oath or affirmation."  U.S. Const. Amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007).  Probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit."  *United States. v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000).

When an issuing judge relies solely upon a supporting affidavit to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause."  *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014).  Judges issuing search warrants may "draw reasonable inferences from the totality of the circumstances" when reading a warrant application to determine whether probable cause exists.  *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (quoting *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009)).

Reviewing courts afford "great deference" to the issuing judge's "initial, on-the-scene

determination that probable cause has been established." *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010). As long as the issuing judge had a "substantial basis" for determining that the search would "uncover evidence of wrongdoing," the Court must uphold the probable cause determination. *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999). Probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Miller*, 11 F.4th 944, 953 (8th Cir. 2021) (citing *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007)), *cert. denied*, 142 S. Ct. 2796).

Mr. Henderson argues that the T-Mobile Tracking Warrant Affidavit contained conclusory statements that Mr. Henderson and Mr. Hooper were suspects in the June 20 shooting, without providing sufficient explanation. (Def.'s Objs. at 8.) He argues that wholly conclusory statements violate the Fourth Amendment and cannot provide a substantial basis for probable cause. (*Id.*) (citing *Nathanson v. United States*, 290 U.S. 41, 44 (1933)). As to the good faith exception, Mr. Henderson contends that it is inapplicable, pointing to Officer Wanschura's testimony that he did not review many of his colleagues' written reports prior to drafting the Affidavit. (*Id.* at 9.)

The facts Officer Wanschura provided in the T-Mobile Tracking Warrant Affidavit were not lengthy, but the Court agrees with the magistrate judge that they supplied a sufficient basis "to give rise to the inference that Mr. Henderson was involved in the June 20 shooting" and that "evidence of such criminal activity reasonably would be found" in the T-Mobile data. (R&R at 12–14) (citing *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) ("[A]n issuing judge may draw reasonable inferences from the totality of the circumstances in

13

determining whether probable cause exists to issue a warrant."). The Affidavit referred to the ongoing investigation into the June 20 shooting and cross-referenced information related to Mr. Henderson obtained from a Facebook warrant. (*See, e.g.*, T-Mobile Tracking Warrant Appl. at 4.) For instance, officers had learned that Mr. Perry had exchanged Facebook calls with "Bfts Fredo" around the time of the shooting, and law enforcement officers knew from prior investigations that the "Bfts Fredo" Facebook profile belonged to Mr. Henderson. (*Id.*) The Affidavit also indicated that Officer Wanschura had learned that Mr. Henderson was using a particular T-Mobile phone number and frequently refers to himself as "Fredo" on open-source social media accounts. (*Id.*)

Again, probable cause does not require evidence sufficient to support a conviction, *Miller*, 11 F.4th at 953, but simply a substantial basis for determining that the requested search will uncover evidence of wrongdoing. *Horn*, 187 F.3d at 785. Based on the four corners of the T-Mobile Tracking Warrant, the Court finds there was a substantial basis for determining that criminal activity reasonably would be found from reviewing the T-Mobile data.

Moreover, the Court disagrees with Mr. Henderson about the applicability of the good faith exception. Even where probable cause is lacking upon subsequent review of a search warrant, under the good-faith exception to the exclusionary rule, exclusion of evidence is not automatically required. *Leon*, 468 U.S. at 920–22. Evidence need not be suppressed if it was objectively reasonable for the officer executing the search warrant to have relied in good faith on the issuing judge's determination of probable cause. *United States v. Norey*, 31 F.4th 631, 635 (8th Cir. 2022) (citing *United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021)). In determining whether an officer had an objectively reasonable belief in the

14

existence of probable cause, courts assess "'the totality of the circumstances, including information known to the officer but not presented to the issuing judge.'" *Norey*, 31 F.4th at 635 (citing *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)). Only if the officer knew or should have known that the search was unconstitutional under the Fourth Amendment should the evidence be suppressed. *Mayweather*, 993 F.3d at 1041 (citing *United States v. Koch*, 625 F.3d 470, 477 (8th Cir. 2010)).

Here, Officer Wanschura testified about the information known to him at the time he applied for the T-Mobile Tracking Warrant. (Aug. 8, 2024 Hr'g Tr. at 25–26.) Although he did not review other officers' written reports, he spoke with his colleagues about the investigation in person and reviewed video evidence. (*Id.*) Evidence in the record sufficiently supports the objective reasonableness of Officer Wanschura's belief in probable cause and Mr. Henderson has not demonstrated that any exceptions to the good-faith rule apply. It cannot be said that a reasonable officer executing the T-Mobile Tracking Warrant should have realized that doing so would violate the Fourth Amendment, despite the fact that a judge had signed it. *United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017). Therefore, even if probable cause was lacking, the good faith exception to the Fourth Amendment would apply here.

For all of these reasons, Mr. Henderson's Motion to Suppress evidence seized pursuant to the T-Mobile Tracking Warrant is denied.

### 2. **Residential Search Warrants**

Mr. Henderson also objects to Magistrate Judge Micko's recommendation to deny the suppression of evidence seized from the two Residential Search Warrants. He argues that the

facts presented in the Residential Search Warrant Affidavits do not give rise to probable cause to associate him with the June 20 shooting. (Def.'s Objs. at 10–11.) He further contends that if the T-Mobile data is suppressed, there is an insufficient nexus between evidence from the shooting and the two residences. (*Id.*)

Finally, Mr. Henderson maintains that the Residential Search Warrants contained material misstatements and omissions that were made intentionally or in reckless disregard of the truth. (*Id.* at 13–16.) Consequently, he asserts, the Residential Search Warrants violate *Franks*, 438 U.S. at 155–56, and the good faith exception is inapplicable.

Again, probable cause exists where, based on the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit." *Tellez*, 217 F.3d at 549. Probable cause requires "evidence of a nexus between the contraband and the place to be searched." *Alexander*, 574 F.3d at 490 (citation omitted). In evaluating whether a nexus exists, courts consider "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017).

The Court agrees with the magistrate judge that the Residential Search Warrant Affidavits sufficiently established a nexus between the June 20 shooting and the two residences in question. The affidavits for both warrants cited evidence of Mr. Hooper's Facebook calls with Mr. Henderson in the time immediately surrounding the shooting. (Blackberry Trail Search Warrant Appl. at 4; Clover Leaf Pkwy. Search Warrant Appl. at 4.) Furthermore, they noted that video footage showed one of the shooters was "a black male, average height and weight wearing a white t-shirt and jeans. The male also has on white

16

sneakers and has a short fade . . . [Mr.] Henderson is a black male, average height and weight with a short face." (Blackberry Trail Search Warrant Appl. at 4–5; Clover Leaf Pkwy. Search Warrant Appl. at 4–5.) The affidavits further stated that Travis Warner, another suspect and a friend of Mr. Henderson, acknowledged that his black Tahoe was seen in surveillance footage at the shooting scene. (Blackberry Trail Search Warrant Appl. at 5; Clover Leaf Pkwy. Search Warrant Appl. at 5.) In addition, the affidavits noted a link between the gun used in the June 20 shooting and an April 2023 shooting at which both Mr. Henderson and Mr. Warner were allegedly present. (Blackberry Trail Search Warrant Appl. at 5; Clover Leaf Pkwy. Search Warrant Appl. at 5.)

As to Mr. Henderson's connection to the two specific addresses, the Residential Search Warrant Affidavits explained that investigators obtained the residential addresses through IP addresses, location data from the T-Mobile Tracking Warrant about Mr. Henderson's whereabouts, and jail phone calls between Mr. Henderson and two possible romantic partners. (Blackberry Trail Search Warrant Appl. at 6; Clover Leaf Pkwy. Search Warrant Appl. at 6.) The cell phone tracking data assisted investigators in determining that Mr. Henderson divided his time equally between the two residences. (Blackberry Trail Search Warrant Appl. at 6; Clover Leaf Pkwy. Search Warrant Appl. at 6.) All of these facts, under the totality of the circumstances, provided probable cause to believe that Mr. Henderson was involved in the June 20 shooting, he resided at the two residences, and there was a fair probability that evidence of the crime would be found in the two residences.

Mr. Henderson also argues that the Residential Search Warrants were constitutionally infirm because they relied on the T-Mobile Tracking Warrant and thus the evidence seized

from the residences constitutes fruit of the poisonous tree.  (Def.'s Objs. at 11.)  However, the
Court has found that the T-Mobile Tracking Warrant was supported by probable cause,
rendering the poisonous tree doctrine inapplicable.

### 3. *Franks* Hearing

In his Motion to Suppress Evidence, Mr. Henderson argues that the Residential Search
Warrant Affidavits contained omissions and false statements that materially affected the
judges' findings of probable cause.  He therefore requests an evidentiary hearing pursuant to
*Franks*.

In *Franks*, 438 U.S. at 155–56, the Supreme Court held that "where the defendant
makes a substantial preliminary showing that a false statement knowingly and intentionally,
or with reckless disregard for the truth, was included by the affiant in the warrant affidavit,
and if the allegedly false statement is necessary to the finding of probable cause, the Fourth
Amendment requires that a hearing be held at the defendant's request."  This "substantial
preliminary showing" requirement is not met lightly, and "requires a defendant to offer
specific allegations along with supporting affidavits or similarly reliable statements." *United
States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015).  Although reckless disregard for the
truth may be inferred from the fact that information was omitted, the inference will lie only
where the defendant shows that the "omitted material would be clearly critical to the finding
of probable cause." *Id*. at 431 (citation omitted).

Mr. Henderson argues that the false statements or omissions concerned the following:
(1) tailoring the suspected shooters' physical descriptions to match Mr. Henderson, even
though his appearance was different; (2) omitting that a geofence warrant showed no

18

indication that Mr. Henderson was at the scene of the shooting and that call record data for Mr. Henderson and Mr. Warner did not connect them on the night of the shooting; and (3) omitting that there was no NIBIN match between the gun used at the June 20 shooting and the gun recovered from the June 23 traffic stop.  (Def.'s Objs. at 13.)

As to Mr. Henderson's request for a *Franks* hearing, the magistrate judge essentially allowed defense counsel to make such inquiries of the Government's witnesses at the suppression hearing.  (Aug. 8, 2024 Hr'g Tr. at 54) (defense counsel stating, at the conclusion of the hearing, "In my mind, there's not any additional evidence that we would need to elicit at an additional hearing.").  Accordingly, the need for an additional, separate *Franks* hearing is moot.

As to his first argument about tailoring the suspects' physical descriptions to match Mr. Henderson, the Court agrees with the magistrate judge that Mr. Henderson cannot show that any discrepancy was the result of Officer Fields's allegedly intentional or reckless false statements or omissions.  (*See* R&R at 21–22.)  Regarding his second argument, the lack of geofence and call detail records between Mr. Henderson and Mr. Warner on June 20 does not diminish the other evidence connecting Mr. Henderson to the shooting or to the two residences.   As to his third argument, any lack of NIBIN evidence linking the gun found on June 23 to the June 20 shooting does not undermine the judges' findings of probable cause for the Residential Search Warrants.  In short, Mr. Henderson has failed to demonstrate that any alleged false statements or omissions were made intentionally or with reckless disregard for the truth and that they impacted the issuing judges' findings of probable cause.

For all of these reasons, the Court denies Mr. Henderson's Motion to Suppress

Evidence.

### D. Speedy Trial Act

While Mr. Henderson's Objections were pending, he scheduled a change-of-plea hearing. (*See, e.g.*, Text-Only Notice of Setting Change of Plea [Doc. No. 46].) Because the parties have been attempting to reach a global resolution of Mr. Henderson's federal and state court cases, the hearing has twice been rescheduled [Doc. Nos. 49, 50]. At the request of counsel, the hearing on Mr. Henderson's change of plea is now set for January 22, 2025.

Under these circumstances, the Court finds that pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h), the ends of justice that will be served by granting a continuance outweigh the best interests of the public and Defendant in a speedy trial. A continuance is necessary to provide Defendant and counsel reasonable time necessary for effective preparation and resolution of his cases and to make efficient use of the parties' resources. Accordingly, the period of time from **the date of this Order through January 22, 2025** shall be excluded from Speedy Trial Act computations in this case.

### III. CONCLUSION

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant's Objections [Doc. No. 45] to the October 21, 2024 Report and Recommendation are **OVERRULED**.

2. Magistrate Judge Douglas L. Micko's October 21, 2024 Report and Recommendation [Doc. No. 43] is **ADOPTED**.

3. Defendant's Motion to Dismiss Counts 1–3 of the Indictment [Doc. No. 25] is

**DENIED**.

4. Defendant's Motion to Suppress Evidence and for a *Franks* Hearing [Doc. No. 26] is **DENIED**.

5. The period of time from **the date of this Order through January 22, 2025** shall be excluded from Speedy Trial Act computations in this case.

Dated: December 16, 2024

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge
